FRANK H. HARTMAN ET AL. *v.* ABSALOM PICKERING ET AL.

1. CHANCERY PRACTICE.   *Res adjudicata.*

   A complainant in an equity suit cannot escape a plea of *res adjudicata* by bringing the suit in the name of another, not a party to the previous suit, for his use.

2. SAME.   *Pro confesso.*

   A final decree of the chancery court predicated of a *pro confesso* just as effectually ajudicates the rights of the parties as any other final decree.

3. SAME.   *Concrete case.*

   A suit in equity enjoining an action of ejectment and seeking a reformation of deeds and a sale of the lands to satisfy certain liens, under a defective foreclosure of which the complainant acquired an interest in the land, to which a tenant of the complainant, an assignee of the lease, claiming a conditional right to become a purchaser at the end of the lease, is made a defendant and who is charged to have colluded with the plaintiff in ejectment in order to defraud the complainant, and which culminates in a decree in complainant's favor directing the sale of the lands, subject to certain adjudicated rights of the tenant, will preclude the tenant from asserting any greater rights than those awarded him by the decree.

FROM the chancery court of Lincoln county.

HON. ROBERT B. MAYES, Chancellor.

Pickering and another, appellees, were complainants in the court below; Hartman and wife, appellants, were defendants there. From a decree in complainants' favor the defendants appealed to the supreme court. The opinion states the facts of the case.

*Frank Johnston,* and *Jones & McCullough,* for appellants.

By the decree of the Franklin county chancery court it was adjudged, expressly, that Pickering had no interest in the land except as a tenant for the year 1902. It was further expressly adjudged that he was to pay $50 for the rent for that year. Pickering performed this decree by paying the $50.

It appears clearly that Pickering's rights under said contract were expressly decided in the former decree. Whether that decree is correct or erroneous is wholly immaterial, as it stands now unreversed and not even appealed from.

It is not at all necessary to invoke the doctrine that everything that might have been litigated in the former suit is *res adjudicata* in view of the fact that Pickering's rights were expressly adjudicated in the former judgment.

Under the averments of the bill, that Pickering had not complied with his contract and that he no longer had any rights under the same, and upon the *pro confesso* decree against Pickering, which was an admission of the truth of these averments, the chancellor could not have done otherwise than adjudge that he should pay rent for 1902, and vacate the property at the end of that year.

This in effect vacated the contract between Hartman and Pickering, and left the latter as a tenant for one year. It was equitable and just to leave him the year within which to gather his then growing crop.


*A. C. McNair,* for appellees.

The rule as to *res adjudicata* as announced by this court, speaking through Mr. Justice Campbell, is: "The mere fact that a claim might be introduced and propounded in a suit does not constitute *res adjudicata,* if, in fact, it was not involved." *Hubbard* v. *Flynt,* 58 Miss., 266; *Davis* v. *Davis,* 65 Miss., 498; *Lorance* v. *Platt,* 67 Miss., 183.

The matters now before the court were not in fact litigated in the former suit.

Argued orally by *Frank Johnston,* for the appellants.

CALHOON, J., delivered the opinion of the court.

Pickering's bill, in which he is joined by Bardwell for Pickering's use, is to reform a contract of date July 12, 1899, so as to correct an erroneous description of land, and for specific performance of it as corrected, and to enjoin Hartman from prosecuting an action he had brought against a mercantile firm for the value of cotton it had bought from Pickering. That contract is as follows:

"State of Mississippi, Lincoln County. This agreement, made this the 12th day of July, by and between F. H. Hartman and Isaiah Bardwell, which is in substance as follows: F. H. Hartman has this day leased to Isaiah Bardwell the following tract and parcel of land situated in Franklin county, Mississippi—to wit., W. 1-2 of S. E. 1-4 of section 12 and ten acres on north side of N. W. 1-4 of N. E. 1-4 of section 11, township 6, range 5, containing ninety acres more or less, upon the following terms—to wit: On October, 1899, Bardwell is to pay Hartman one bale of good middling cotton, to weigh four hundred and fifty pounds; and on October 1st, 1900, $110; on October 1st, 1901, $120; on October 1st, 1902, $130; on October 1st, 1903, 140.

"Now, when each and every one of said payments are fully satisfied, then the said F. H. Hartman covenants and agrees to make said Isaiah Bardwell a good and valid deed of conveyance to the aforesaid land.

"It is further understood and agreed should a misfortune or disaster occur to the crop, the said Isaiah Bardwell will pay as much as forty ($40) dollars; the remainder of said note is to be carried over to the next year.

"F. H. HARTMAN,
"ISAIAH B. X. BARDWELL.

"Witness, J. A. Eitel."

Under this contract Hartman had all the rights of a landlord until final payment made, when, and not until when, he could be compelled to convey title to Bardwell or his assigns. Concededly, there was an accidental misdescription of the land, and clearly the reformation of the contract, together with a decree for specific performance, was an equitable right, unless defeated by intervening defenses. The history of the land designed to be described is that it was once owned by one Buckles, from whom Hartman derived it under a conveyance from a trustee with the same misdescription as appears in the contract above recited between Hartman and Bardwell, all being ignorant of any error in the description; but Hartman had been in possession and put Bardwell in possession of the right land as it should have been described, and Bardwell sold his interest in his contract with Hartman to Pickering, and put him in possession. In this situation there would have been no legal trouble if the land had been properly described, and if Pickering had made or tendered the payments which he says he did, but which Hartman denies. But during Pickering's possession the error in the description was discovered, and it came to the ears of Buckles, the common source, and Buckles brought ejectment; whereupon Hartman filed a bill against Buckles and Pickering, praying that Buckles be perpetually enjoined from prosecuting his ejectment suit, that the conveyance from Buckles to Hartman be reformed, that an account of the debt be ordered, and for sale of the land to satisfy the debt, and for "such other relief, general and special, as the nature of the case may entitle him to receive." As predicate for this prayer Hartman set up in this bill the facts stated in this opinion, and that Pickering was in as sublessee of Bardwell; that Pickering, while so in possession, discovered the mistake in the description, and refused to pay the rents under the contract, and that Pickering himself told Buckles of the mistake in the description, and that the ejectment suit was by collusion between them to enable Pickering to defraud Hartman of his title; that Pickering with-

holds possession and refuses to pay rent; and the bill claims the right to have Pickering removed from the possession. Pickering was duly made a party by personal service of proper process in that suit, and made no answer, and a *pro confesso* was taken against him. The final decree in that cause was made April 30, 1902, "on bill, exhibits, answer, cross-bill and answer thereto, and *pro confesso* against Pickering, and proofs oral and documentary taken in open court by agreement." It adjudges that Hartman "is rightfully entitled, as mortgagee, to the possession" of the land; that Buckles be perpetually enjoined from prosecuting the ejectment suit; that the conveyance be reformed, the debt be ascertained, and the land sold in default of its payment; and concludes in these words: "It is also adjudged and decreed that, as against the defendant, A. Pickering, the complainant is entitled to the possession of said lands, and to the rent therefor for the year 1902 at the price and sum of $50, which said sum is payable on or before November 1, 1902, and shall be a lien on the crops that Pickering may raise thereon during the year; and that, as against the purchaser or purchasers of the land at a sale under this decree, said Pickering may retain possession until December 31, 1902, and no longer, and that the sale shall be made subject to Pickering's right to the possession and use of the said land for the year 1902." Pickering was personally present when that final decree was rendered, and made no objection to it, except that he requested Judge Cassedy, a counselor at law, to ask the chancellor not to tax him with the costs, to which the chancellor agreed, and no costs were taxed to him. He paid the $50 rent for 1902, pursuant to the decree, and pursuant to that decree the land was sold, and Mrs. Hartman bought, and she is, by an amended bill, made a party defendant to the present suit now before us. The former decree, with the confirmed land sale pursuant to it, stands unappealed from the unreversed, and is pleaded in the present suit as *res adjudicata.* This plea, we think, is fully sustained by the record adduced in support of it. It adjudi-

cated adversely to Pickering the very claim he sets up in his bill in the present suit. It he did not set it up in defense in the other suit, he might have done so, and is equally bound by the decree in that, and cannot relitigate it by joining Bardwell as co-complainant for his use.

> *Reversed, and decree here dismissing the bill.*